UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

JAVIER A. COREA-FLORES, ET AL.              CIV. ACTION NO. 3:24-00744

VERSUS                                                      MAG. JUDGE KAYLA D. MCCLUSKY

STATE FARM FIRE AND CASUALTY
COMPANY

## MEMORANDUM RULING

Before the Court is a motion for partial summary judgment [doc. # 31] filed by Defendant State Farm Fire and Casualty Company.   The motion is unopposed.   For reasons set forth below, IT IS ORDERED, ADJUDGED, and DECREED that the motion is GRANTED.

### Background

On April 5, 2024, Javier A. Corea-Flores ("Corea-Flores") and Norma Mauricio ("Mauricio") (collectively, "Plaintiffs") d/b/a Mi Casa Grande (the "Restaurant")[1] filed the instant Petition for Damages against the Restaurant's commercial business insurer, State Farm Fire and Casualty Company ("State Farm"), in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.   (Petition [doc. # 1]).   According to the Petition, as of April 6, 2023, Plaintiffs were operating the Restaurant from a building located at 3426 Cypress Street, Suite 7, West Monroe, Louisiana, which they had leased from Blanchard Grove Properties, L.L.C.  *Id*., ¶ 2.   On an unspecified date, but likely April 6, 2023, the Restaurant became engulfed in flames, resulting in the destruction of Plaintiffs' "belongings" inside the Restaurant. *Id*., ¶ 3.

At the time of the fire, Plaintiffs had a commercial insurance policy in effect with State

---

[1] Alternatively spelled, at times, as Mi Casa Grandelo in the Petition and Mi Casa Grandeio on the Policy.   *See* Petition and State Farm Policy (MSJ, Exh. A [doc. # 31-3]).

Farm, and, therefore, they submitted a demand to State Farm for damages they sustained from the fire. *See* Petition, ¶¶ 2, 6. State Farm, however, denied coverage for the loss. *Id.*, ¶ 7. Plaintiffs contend that State Farm's denial of coverage was arbitrary and capricious in violation of Louisiana Revised Statute § 22:658.[2] *Id.*, ¶ 7. Each Plaintiff seeks damages for his or her respective lost property, loss of use, mental distress, and inconvenience, plus attorney's fees stemming from State Farm's arbitrary and capricious conduct. *Id.*, ¶¶ 8-9.

On June 3, 2024, State Farm removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). On September 12, 2024, the parties filed their Rule 26(f) Case Management Report, stating that they consented to trial by magistrate judge. (Rule 26(f) Case Mgmt. Report [doc. # 14]). Pursuant to the parties' consent, the District Court referred the case to the undersigned Magistrate Judge to conduct all further proceedings and for entry of judgment. (Order of Reference [doc. # 15]).

On June 25, 2025, the Court permitted Plaintiffs' counsel to withdraw from the case and directed Plaintiffs either to enroll new counsel or to file a notice stating that they intended to represent themselves in this matter. [doc. #s 25-26]. When Plaintiffs failed to comply, the Court issued a show cause order, to which Plaintiffs eventually responded and confirmed that they intended to represent themselves. [doc. #s 27-29]. On August 15, 2025, the Court acknowledged Plaintiffs' responses and reminded them that the April 9, 2025 scheduling order remained in effect, which included, among other deadlines, a discovery completion deadline of September 30, 2025, as well as a **March 9, 2026** trial date. (Order [doc. # 30]).

On November 14, 2025, State Farm filed the instant motion for summary judgment

---

[2] By Act 2008, No. 415, § 1, effective Jan. 1, 2009, the Louisiana legislature renumbered § 22:658 to § 22:1892. *Guillory v. Lee*, 16 So.3d 1104, 1111 n.5 (La. 2009).

seeking dismissal of Plaintiffs' claims for bad faith damages, penalties, and attorney's fees under Louisiana Revised Statutes §§ 22:1892 and 22:1973.[3]  Plaintiffs did not file a response to the motion, and the time to do so is long past.  *See* Notice of Motion Setting [doc. # 32] (setting response date for December 5, 2025).  Accordingly, the motion is deemed unopposed.  *Id*.

## Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.

---

[3]  While the motion alternatively purports to seek summary judgment based on the affirmative defense of arson, which precludes *coverage* under the Policy, the supporting memorandum only seeks dismissal of Plaintiffs' claims under Louisiana Revised Statutes §§ 22:1892 and 22:1973. The Court will give effect to the relief requested in State Farm's memorandum, which provides a more detailed and tailored analysis of the case.

*Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.   While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-323.   The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).   The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence.  *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"  *Little,* 37 F.3d at 1075-1076 (citation omitted) (emphasis in original).   In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

Finally, when a movant bears the burden of proof on an issue, it must establish "beyond

4

peradventure[4] all of the essential elements of the claim . . . to warrant judgment in h[er] favor."

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).   In other words, the movant must

affirmatively establish its right to prevail as a matter of law.   *Universal Sav. Ass'n v.*

*McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Facts

I.    **The Policy and the Lease**

State Farm insured Norma Mauricio d/b/a Mi Casa Grandeio [sic] under State Farm

Restaurant Policy No. 98-CF-R707-5 for the policy period August 10, 2022 to August 10, 2023.

(State Farm Policy, pg. 1, Declarations Page; MSJ, Exh. A [doc. # 31-3]).[5]   Plaintiffs operated

the Restaurant out of a building at 3426 Cypress Street, Suite 7, West Monroe, Louisiana, in a

space leased from Blanchard Grove Properties, LLC, beginning January 1, 2020, at a monthly

rent of $2,017.   (Pls' Ans. to Interr. Nos. 21-22; MSJ, Exh. C [doc. # 31-5]).

II.   **Eviction Proceedings and the Fire**

On March 8, 2023, Blanchard Grove Properties, L.L.C., delivered a letter to Corea-Flores

entitled, Termination of Lease and Notice to Vacate.   (Attach. to Deposition of Sharon Smith;

MSJ, Exh. D [doc. # 31-6, pgs. 55-56]).   The letter advised Corea-Flores that the lease was

terminated and that he had to cease doing business immediately.   *Id*.   The letter further

documented that Corea-Flores owed over $22,000 for outstanding rental payments and damage

to adjacent property caused by a grease trap overflow.   *Id*.

---

[4]  I.e., beyond doubt.

[5]  On November 11, 2025, State Farm claims specialist, Jeremy Moore, executed a declaration
authenticating the State Farm Policy and business records submitted in support of the motion
for summary judgment.   (Moore Decl.; MSJ, Exh. B [doc. # 31-4]).

Plaintiffs, however, did not vacate the leased premises.   (Smith Depo., pg. 15; MSJ Exh. D.)   Accordingly, on March 16, 2023, the landlord, Blanchard Grove Properties, LLC, filed a Rule for Eviction against Plaintiff Javier Corea-Flores d/b/a Mi Casa Grande in West Monroe City Court for failure to pay rent and for other defaults under the lease agreement.   (Pls. Responses to Reqs. For Prod.; MSJ, Exh. C [doc. # 31-5, pgs. 27-30]).

On April 4, 2023, at 9:04 a.m., the West Monroe City Court issued a Judgment of Eviction in favor of Blanchard Grove Properties, LLC, and against Javier Corea-Flores d/b/a Mi Casa Grande, ordering that the leased premises be vacated within 24 hours.   (Judgment in Eviction, Attach to Smith Depo., pg. 42; MSJ, Exh. D).

The next day, on April 5, 2023, the West Monroe City Court issued an Eviction Writ of Possession for the City Marshal to serve on Javier Corea-Flores d/b/a Mi Casa Grande for his failure to comply with the Judgment of Eviction.   (Eviction Writ of Possession, Attach. to Smith Depo., pg. 43).

On April 6, 2023, at approximately 5:08 a.m., a fire occurred at the Restaurant.   (April 10, 2023 Initial Origin and Cause Report, Attach. to Charles Hugghins Deposition; MSJ, Exh. E [doc. # 31-7, pgs. 35-38]).   Surveillance video showed an unknown individual park at a nearby Walgreens store and then jump the fence in the direction of the subject building.   *Id*.   About one hour and twenty minutes later, the same individual returned to the vehicle and departed.   *Id*.   Chief Hugghins determined that the fire was incendiary with multiple points of origin.   *Id*.   No suspects were identified.   *Id*.

6

### III.    State Farm Begins its Investigation of the Claim

On April 8, 2023, a State Farm claims specialist sent Mi Casa Grandeio [sic] a letter acknowledging receipt of the claim for the fire loss occurring on April 6, 2023, and stating that State Farm had been unable to contact the insured regarding the claim.   (April 8, 2023 Letter from State Farm to Mi Casa Grandeio; MSJ, Exh. F [doc. # 31-8, pg. 36]).

On April 17, 2023, State Farm contacted Bo Roberts & Associates to investigate the cause of the fire.   (Nov. 11, 2025 Decl. of Bo Roberts and Fire Scene Examination Report; MSJ, Exh. G [doc. # 31-9, pg. 5])˙

On April 20 and 27, 2023, another State Farm claims specialist sent letters to Mauricio and/or Corea-Flores regarding the claim status and request for communication.   (Letters from State Farm to Mi Casa Grandeio; MSJ, Exh. F [doc. # 31-8, pgs. 31-34]).

On April 26, 2023, the same State Farm claims specialist sent an email to Mauricio requesting a return call to State Farm regarding the matter.   *Id*., pg. 22.

On May 4, 2023, State Farm representatives sent letters to Mauricio indicating possible intentional conduct and scheduling examinations under oath.   *Id*., pgs. 25-30.

On May 19, 2023, Bo Roberts issued a report to State Farm regarding his cause and origin investigation of the fire.   (Nov. 11, 2025 Decl. of Bo Roberts and Fire Scene Examination Report; MSJ, Exh. G).   As part of his investigation, Roberts interviewed Charles Hugghins, Chief of Fire Prevention at the West Monroe Fire Department, and Sharon Smith, the property manager.   *Id*.   Hugghins explained that the fire department arrived on scene four minutes after receiving the call, but, by then, the fire already had been extinguished by the building's sprinkler system.   *Id*.   Firefighters found evidence of a forced entry to the back door.   *Id*.   Furthermore,

the police department was investigating a possible break-in or burglary.  *Id*.  Hugghins stated

that firefighters found multiple points of fire origin in the restaurant, along with a fuel container

on the stovetop with the stove burners turned on.  *Id*.  He added that every other knob on the

gas stove was on, with the container of fuel on top of the stove and a container of cooking oil on

the flat-top next to the stove.  *Id*.

Roberts observed that paper towels had been rolled out and draped across the booths,

apparently in an effort to spread the fire among the booths.  *Id*.  Laboratory analysis of the

paper towels showed gasoline in three of the four samples.  *Id*.  Photographs of the interior of

the Restaurant showed only isolated areas of limited fire damage.  *Id*.  Roberts opined that the

fire was of incendiary origin, i.e., "a fire that is intentionally ignited in an area or under

circumstances where and when there should not be a fire."  *Id*. (citing NFPA 921, 3.3.121).

## IV.  Corea-Flores' Examination Under Oath

On June 7, 2023, counsel for State Farm conducted an examination under oath ("EUO")

of Corea-Flores.  (EUO of Corea-Flores; MSJ, Exh. H [doc. # 31-10]).  Corea-Flores testified

that neither he nor Mauricio attended the hearing for the eviction proceedings because their

attorney told them the wrong date.  *Id*., pg. 7.  Corea-Flores received the writ of possession

from the city marshal who told him he could no longer operate the business.  *Id*., pg. 11.

Corea-Flores denied that the city marshal told him he had to vacate the premises in 24 hours and

stated that he did not understand the document because he does not read English well.  *Id*., pg.

12.

Corea-Flores testified the last day the restaurant was open was on April 4, 2023, the day

of the court hearing.  *Id*., pgs. 30-31.  Corea-Flores has not been back inside the Restaurant

since the fire.   *Id*., pg. 27.   He also did not know what happened to their property that was in the Restaurant or what items may have been damaged.   *Id*., pgs. 28-29.

**V.      Mauricio's Examination Under Oath and Sworn Proof of Loss**

State Farm also took Mauricio's examination under oath ("EUO") on June 7, 2023. (EUO of Mauricio; MSJ, Exh. I [doc. # 31-11]).   Mauricio denied that the Restaurant was behind on rental payments, but acknowledged that late fees on late rental payments and common area maintenance amounts were owed to the landlord.   *Id*., pg. 19.   At the time of the fire, the Restaurant also owed sales tax and money to food suppliers that had not been paid.   *Id*., pgs. 39, 22, 23, 25.   Mauricio acknowledged receipt of the letter from the landlord evicting them.   *Id*., pgs. 22-23.   However, she was under the impression that if they paid the landlord $4,302 by March 15, 2023, they could continue to operate the Restaurant.   *Id*., pgs. 34-35.   Accordingly, Mauricio gave the property manager five money orders for that amount.   *Id*., pg. 35.

Mauricio acknowledged receipt of the judgment of eviction served on the restaurant which she brought to her attorney.   *Id*., pgs. 37-38.   After the eviction hearing, the city marshal served the Restaurant with the eviction writ of possession.   *Id*., pg. 39.   According to Mauricio the Restaurant remained open until 9:00 p.m. on the evening of April 5, 2023.   *Id*., pgs. 43-45.

Mauricio learned of the fire from her insurance agent's office the morning of the fire. *Id*., pg. 47.   As of the date of the EUO, Mauricio had not returned to the Restaurant since the fire.   *Id*., pg. 52.   Mauricio did not know what may or may not have been damaged or destroyed in the fire.   *Id*., pgs. 55, 72.   Moreover, she never contacted the landlord after the fire to determine where the business contents of the Restaurant were located.   *Id*., pgs. 60-61, 70.

On June 12, 2023, Mauricio executed a sworn proof of loss statement claiming $485,000 as the actual cash value of property lost in the fire.   (Sworn Statement; MSJ, Exh. F, pgs. 37-38).

## VI.    State Farm Continues its Investigation

On June 14, 2023, State Farm sent a letter to Plaintiffs requesting the financial records for the Restaurant in continuance of the investigation.   (June 14, 2023 Letter from State Farm to Plaintiffs; MSJ, Exh. F, pgs. 20-21).

On August 20, 2023, State Farm received a handwritten itemization, in Spanish, of the Restaurant's business contents.  *Id*., pgs. 8-19.   The itemization later was translated to English and totaled $685,000.  *Id*.

On August 25, 2023, State Farm wrote to Mauricio advising her that an eviction notice had been served on the Restaurant before the fire and that the landlord had since taken possession of all the movable property in the Property and had asserted a lessor's lien thereon. (Aug. 25, 2023 Letter from State Farm to Mauricio; MSJ, Exh. F., pgs. 6-7).   State Farm further explained that the inspection, which occurred on August 10, 2023, found damage limited to two booth benches, with no damage to the remaining appliances.  *Id*.   In other words, the fire had been small and had been contained by the sprinkler system.  *Id*.   Accordingly, State Farm requested a detailed inventory of the damaged items with proof of ownership and offered to provide a Spanish interpreter.  *Id*.

On April 29, 2024, State Farm wrote to Plaintiffs' attorney advising him that it had received Mauricio's handwritten list of damaged property.   (April 29, 2024 Letter from State Farm to B. Manning; MSJ, Exh. F, pgs. 1-2).   State Farm reiterated that its investigation had

confirmed that the fire was intentionally set, stating that video footage showed an individual breaking into the rear door, and noting that the arson investigation remained open with the West Monroe Police and Fire Departments. *Id.* The letter further noted that Plaintiffs had been evicted from the leased premises before the fire occurred. *Id.*

State Farm explained that the damage was minimal, limited to two booth benches, and that much of the property claimed as damaged remained in storage under the landlord's control. *Id.* State Farm also emphasized that the landlord had asserted a lessor's privilege over the contents and that a new tenant was now occupying the premises. *Id.*

As part of its continued investigation, State Farm again requested documentation proving ownership of the claimed damaged items, such as receipts, bank statements, or canceled checks, showing not only proof of ownership but also that the items were damaged as a result of the fire, rather than from the eviction or subsequent seizure. *Id.*

On October 20, 2025, State Farm took the deposition of West Monroe Police Detective Chad Michael Grubbs. (Grubbs Depo.; MSJ, Exh. L [doc. # 31-14]). By reviewing video footage from the building where the Restaurant was located, Grubbs was able to link the vehicle that likely was used by the suspected arsonist to a vehicle used by an individual who earlier had visited a nearby Cricket Wireless store. *Id.*, pgs. 17-19. Grubbs went to the Cricket Wireless store, asked them who the individual was, and learned that his name was Alex Flores. *Id.* Grubbs then interviewed Corea-Flores and asked him whether he knew Alex Flores. *Id.*, pg. 22. Corea-Flores said that he had known Alex Flores for about five years. *Id.* Grubbs did not ask him whether they were related. *Id.* Grubbs never was able to locate Alex Flores. *Id.*, pg. 23.

11

## Analysis

State Farm contends that it reasonably investigated the subject fire and insurance claim, and, based on that investigation, denied payment in good faith.   State Farm maintains that it had a legitimate and reasonable basis for denial of coverage which precludes any finding that its actions were arbitrary, capricious, or without probable cause as required to support penalties and fees under Louisiana Revised Statutes §§ 22:1892 and 22:1973.[6]

To establish a cause of action for damages, penalties, and/or attorney fees under Louisiana Revised Statute § 22:1892,[7] "a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory*, 16 So.3d at 1126-1127(citing former § 22:658).   The Louisiana Supreme Court has equated "arbitrary, capricious, or without probable cause," to a "vexatious refusal to pay," which, in turn, means "unjustified, without reasonable or probable cause or excuse."    *Id*.   (citations

---

[6]  Plaintiffs did not expressly invoke § 22:1973 in their Petition.   Moreover, § 22:1973 was repealed by Act No. 3 of the 2004 Regular Session, effective July 1, 2024.   *Cheek v. Convex Ins. UK Ltd.*, Civ. Action No. 23-7106, 2025 WL 3013309, at *2 (E.D. La. Oct. 28, 2025), *reconsideration denied*, 2025 WL 3684231 (E.D. La. Dec. 19, 2025).   In any event, the conduct prohibited by §§ 1892 and 1973 is virtually identical.   *See Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003) (utilizing the statutes' prior numbering).

[7]  A federal court sitting in diversity applies the substantive law of the forum state.   *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citation omitted).   Plaintiffs specifically invoked Louisiana law in their Petition.   Furthermore, State Farm analyzed their claims under Louisiana law.   Therefore, the parties implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana.   *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

12

omitted).

Furthermore, statutory penalties are "inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, especially when there is a reasonable and legitimate question as to the extent and causation of a claim . . ."  *Id*. (citing *Reed*, 857 So.2d at 1021).   Thus, "when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."  *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 428 (5th Cir. 2024) (quoted source omitted).

Applying the foregoing principles here, the Court observes that State Farm has presented uncontroverted evidence that, throughout the relevant period, it has had a reasonable and legitimate question regarding the extent and causation of the loss.   First, as early as May 19, 2023, State Farm had evidence from its retained expert, Bo Roberts, showing but little fire damage to the contents of the Restaurant.   Thereafter, in June 2023, State Farm questioned Plaintiffs under oath where they admitted that they had not been back to the Restaurant since the fire and, therefore, did not know whether their property was destroyed in the fire or what happened to it.   Moreover, State Farm obtained evidence that the landlord had exercised a lessor's lien over the undamaged property and/or had removed it.   While Plaintiffs eventually provided State Farm with a list of items that they assert were lost in the fire, they have produced zero supporting documents for the claimed loss and no evidence that the items were destroyed, rather than seized by the lessor.

In addition, State Farm had clear evidence that the fire was of an incendiary origin,

13

together with facts confirming that the Plaintiffs were facing eviction and financial hardship from the imminent closure of the Restaurant.   This circumstantial evidence provides support for State Farm's affirmative defense of arson.[8]

In sum, the Court finds that, in response to State Farm's well-supported summary judgment motion, Plaintiffs have not met their burden to show that there is a genuine dispute of material fact as to whether State Farm's failure to pay benefits under the Policy was "arbitrary, capricious or without probable cause" -- an essential element of their claim for damages, penalties, and/or fees under §§ 22:1892 and 1973.   Accordingly, no reasonable trier of fact could return a verdict in their favor and State Farm is entitled to judgment as a matter of law, dismissing the claim.

## Conclusion

For the above-assigned reasons,

IT IS ORDERED, ADJUDGED, AND DECREED that the motion for partial summary judgment [doc. # 31] filed by Defendant State Farm Fire and Casualty Company is GRANTED, and Plaintiffs' claims for damages, penalties, and/or attorney's fees under Louisiana Revised Statutes §§ 22:1892 and/or 1973 are DISMISSED WITH PREJUDICE.

---

[8] State Farm argued, in the alternative, that summary judgment was warranted pursuant to the affirmative defense of arson, which requires proof by a preponderance of the evidence "(1) that the fire was of an incendiary origin, and (2) that the plaintiff was responsible for setting the fire." *Kelly v. Commercial Union Ins. Co.,* 709 F.2d 973, 975 (5th Cir. 1983).   "A motive [on the part of the insured], plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense [of arson] pleaded by the insurer." *Ashworth v. State Farm Fire & Cas. Co.,* 738 F. Supp. 1032, 1032 (W.D. La. 1990) (citation omitted).

14

In Chambers, at Monroe, Louisiana, on this 3rd day of February, 2026.

_____

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE